

1 THOMAS P. O'BRIEN
United States Attorney
2 LEON W. WEIDMAN
Chief, Civil Division
3 MONICA L. MILLER
E-mail: Monica.Miller@usdoj.gov
4 California Bar No: 157695
Assistant United States Attorney
5 United States Attorney's Office
300 North Los Angeles Street, Room 7516
6 Los Angeles, CA 90012
Telephone: (213) 894-4061
7
RONALD J. TENPAS
8 Acting Assistant Attorney General
Environmental & Natural Resources Division
9 STEVEN O'ROURKE
E-mail: steve.o'rourke@usdoj.gov
10 Massachusetts Bar No.: 565493
Environmental Enforcement Section
11 Environmental & Natural Resources Division
United States Department of Justice
12 P.O. Box 7611, Washington, D.C. 20044-7611
Telephone: (202) 514-2779
13 Attorneys for Plaintiff United States of America

14 EDMUND G. BROWN Jr.
Attorney General of the State of California
15 TOM GREENE
Chief Assistant Attorney General
16 THEODORA BERGER
Senior Assistant Attorney General
17 DON ROBINSON
Supervising Deputy Attorney General
18 ANN RUSHTON State Bar No. 62597
E-mail: Ann.Rushton@doj.ca.gov
19 Deputy Attorney General
300 South Spring Street, Suite 1702
20 Los Angeles, CA 90013
Telephone: (213) 897-2608; Fax: (213) 897-2802
21 Attorneys for Plaintiff Department of Toxic Substances Control

22          **UNITED STATES DISTRICT COURT**
             **CENTRAL DISTRICT OF CALIFORNIA**
23                  **WESTERN DIVISION**

24 UNITED STATES OF AMERICA and
CALIFORNIA DEPARTMENT OF
25 TOXIC SUBSTANCES CONTROL,          CIV. NO. :

26          Plaintiffs,                **CV07-06873**

27     v.

28 ANDRUSS FAMILY TRUST, et al.,       **CONSENT DECREE**

          Defendants.

FILED
CLERK, U.S. DISTRICT COURT
APR 10 2008
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

JS-6

ABC (CWx)

1

2                                   I.  **BACKGROUND**

3          A.     The United States of America ("United States"), on behalf of the

4   Administrator of the United States Environmental Protection Agency ("EPA"), and

5   the California Department of Toxic Substances Control ("Department"), filed a

6   complaint in this matter pursuant to Section 107 of the Comprehensive

7   Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §

8   9607, as amended ("CERCLA"), seeking reimbursement of response costs incurred or

9   to be incurred for response actions taken or to be taken at or in connection with the

10  release or threatened release of hazardous substances at the South El Monte Operable

11  Unit (the "Site") of the San Gabriel Valley Area 1 Superfund Site in South El Monte,

12  Los Angeles County, California.

13         B.     The Settling Defendants, as defined herein below, that have entered into

14  this Consent Decree do not admit any liability to Plaintiffs arising out of the

15  transactions or occurrences alleged in the complaint.

16         C.     The decision by EPA on the remedial action to be implemented at the

17  Site is embodied in an Interim Record of Decision ("IROD"), executed on September

18  29, 2000.  The IROD includes a responsiveness summary to the public comments.

19  Notice of the final plan was published in accordance with Section 117(b) of

20  CERCLA.  The IROD is attached as Appendix A.

21         D.     EPA issued an Explanation of Significant Differences ("ESD") on

22  November 10, 2005, addressing certain additional contamination treatment at the Site.

23  The ESD is attached as Appendix B.

24         E.     The San Gabriel Valley Water Quality Authority ("WQA"), City of

25  Monterey Park,  Golden State Water Company, and San Gabriel Valley Water

26  Company (collectively, the "Water Entities") have agreed to perform the IROD Work

27  and WQA is negotiating an agreement with EPA regarding the Water Entities'

28  continued performance of this IROD Work and the ESD Work ("Cooperative

1  Agreement").

2  F.   The Settling Defendants paid the Water Entities $4.7 million in 2002 to
3  fund the IROD Work.  EPA has determined that the Settling Defendants' payments to
4  fund IROD work was consistent with Settling Defendants' fair share of the total
5  projected cost of the IROD Work at the time of payment.

6  G.   EPA has projected the cost of the ESD Work, and has determined that a
7  payment of $3.4 million under this Consent Decree from the Group of 10 Settling
8  Defendants, as defined herein below, is consistent with the Group of 10 Settling
9  Defendants' fair share of the total projected cost of the ESD Work.

10  H.   The United States, the Department, and Settling Defendants agree, and
11  this Court by entering this Consent Decree finds, that this Consent Decree has been
12  negotiated by the Parties in good faith, that settlement of this matter will avoid
13  prolonged and complicated litigation among the Parties, and that this Consent Decree
14  is fair, reasonable, and in the public interest.

15  THEREFORE, with the consent of the Parties to this Decree, it is ORDERED,
16  ADJUDGED, AND DECREED:

## II.  JURISDICTION

18  1.   This Court has jurisdiction over the subject matter of this action pursuant
19  to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b) and also has
20  personal jurisdiction over Settling Defendants.  Settling Defendants consent to and
21  shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter
22  and enforce this Consent Decree.

## III.  PARTIES BOUND

24  2.   This Consent Decree is binding upon the United States, the Department,
25  and upon the Settling Defendants and their heirs, successors and assigns.  Any change
26  in ownership or corporate or other legal status, including, but not limited to, any
27  transfer of assets or real or personal property, shall in no way alter the status or
28  responsibilities of Settling Defendants under this Consent Decree.

-3-

## IV.  **DEFINITIONS**

3.     Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

a.     "Basin-Wide Response Costs" shall mean response costs, including but not limited to direct and indirect costs, including accrued Interest, of the United States and the Department, paid or in the future paid for basin-wide (non-operable unit) response actions in connection with the San Gabriel Valley Superfund Sites, Areas 1 though 4, allocated to the Site.

b.     "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq.*

c.     "Consent Decree" shall mean this Consent Decree and all appendices attached hereto.  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

d.     "Department" shall mean the California Department of Toxic Substances Control and any successor departments, agencies, or instrumentalities.

e.     "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

f.     "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

g.     "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

h.     "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

i.     "Explanation of Significant Differences" or "ESD" shall mean the

1 Explanation of Significant Differences relating to the treatment of certain
2 contamination at the Site, issued by EPA on November 10, 2005.

3        j.        "ESD Work" shall mean all activities that implement the additional
4 interim remedial measures described in the ESD.  The "ESD Work" does not include
5 the "IROD Work."

6        k.        "Future IROD Response Costs" shall mean all response costs that are
7 incurred by the United States or the Department for response actions with respect to
8 the IROD Work (excluding Future ESD Response Costs) after the Effective Date,
9 including, but not limited to, direct and indirect costs that are incurred by the United
10 States or the Department.  "Future IROD Response Costs" shall also include all
11 Basin-Wide Response Costs, occurring after the Effective Date.

12        l.        "Future ESD Response Costs" shall mean all response costs that are
13 incurred by the United States or the Department for response actions with respect to
14 the ESD Work (excluding Future IROD Response Costs) after the Effective Date,
15 including, but not limited to, direct and indirect costs that are incurred by the United
16 States or the Department.  "Future ESD Response Costs" shall also include all Basin-
17 Wide Response Costs, occurring after the Effective Date.

18        m.        "Group of 10 Settling Defendants" shall mean those Settling Defendants
19 Andruss, Cardinal , Jebbia, IMS, Roc-Aire, Electronic Solutions, Servex, Smittybilt,
20 SCE, and EEMUS, as each of those Settling Defendants is defined herein at Section
21 IV Paragraph 3.x.

22        n.        "Interim Record of Decision" or "IROD" shall mean the EPA Record of
23 Decision relating to the Site signed on September 29, 2000 by the Regional
24 Administrator, EPA Region IX, or his/her delegate, and all attachments thereto.

25        o.        "IROD Work" shall mean all activities that implement the interim
26 remedy (addressing containment of the intermediate zone groundwater contamination
27 present in the northwestern part of the Site) described in the IROD.  The "IROD
28 Work" does not include the "ESD Work."

1     p.   "Interest" shall mean interest at the rate specified for interest on

2 investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. §

3 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C.

4 § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the

5 interest accrues.  The rate of interest is subject to change on October 1 of each year.

6     q.   "Owner Settling Defendants" shall mean the following Settling

7 Defendants:  Andruss,

8 Cardinal, Durham, Jebbia, JAB, Janneberg, and SCE.

9     r.   "Paragraph" shall mean a portion of this Consent Decree identified by an

10 Arabic numeral or an upper or lower case letter.

11     s.   "Parties" shall mean the United States, the Department, and the Settling

12 Defendants.

13     t.   "Past Response Costs" shall mean all response costs, including, but not

14 limited to, direct and indirect costs of the United States and the Department, paid at or

15 in connection with the Site through the Effective Date.  "Past Response Costs" shall

16 also include all past Basin-Wide Response Costs, occurring on or before the Effective

17 Date.

18     u.   "Plaintiffs" shall mean the United States and Department.

19     v.   "RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. § 6901, *et*

20 *seq.* (also known as the Resource Conservation and Recovery Act).

21     w.   "Section" shall mean a portion of this Consent Decree identified by a

22 Roman numeral.

23     x.   "Settling Defendants" shall mean:

24     1. Andruss Family Trust, and 1987 Survivors Trust under terms of

25 Trust; Ray E. Andruss;  Ray E. Andruss, Jr.; James Russell Andruss; Margaret M.

26 Andruss; Peggy Ann (Andruss) Suber (formerly known as Peggy Ann (Andruss)

27 Bethel); June Ellen Andruss; James R. Andruss and June E. Andruss Family Trust

28 dated September 22, 1987; Survivor's Trust Under Declaration of Trust Dated

1   September 22, 1987; Andruss Family Trust; The James R. Andruss and June E.

2   Andruss 1987 Family Trust; James Ralph Andruss; Claudia Annette (Andruss)

3   Billings (formerly known as Claudia Annette (Andruss) Silverman); and Garvey &

4   Rosemead, LLC; (collectively "Andruss");

5            2.  APW North America Inc., formerly known as Zero

6   Corporation; Electronic Solutions; (collectively Electronic Solutions");

7            3.  Artistic Polishing & Plating, Inc.; Art 1981 Revocable Living

8   Marital Deduction Trust; Art 1981 Revocable Living Exemption Trust; Sue Art as

9   Trustee of Art 1981 Revocable Living Marital Deduction Trust; Sue Art as Trustee of

10  Art 1981 Revocable Living Exemption Trust; Klingerman, LLC; (collectively,

11  "Artistic");

12           4.  Cardinal Industrial Finishes; Cardco; (collectively, "Cardinal");

13           5.  Durham Transportation, Inc.; Durham School Services Inc.;

14  Durham Family Limited Partnership; (collectively, "Durham");

15           6.  Eemus Manufacturing Corp. ("EEMUS");

16           7.  International Medication Systems, Ltd. ("IMS");

17           8.  Norf James Jebbia Testamentary Trust; Gloria Jebbia as trustee

18  of the Norf James Jebbia Testamentary Trust; (collectively, "Jebbia");

19           9.  J.A.B. Holdings, Inc., formerly known as J.A. Bozung

20  Company ("JAB");

21           10. Roc-Aire Corp. ("Roc-Aire");

22           11. Janneberg Marital Trust, as successor to Servex Corporation;

23  Janneberg Residuary Trust, as successor to Servex Corporation; Baerbel Janneberg as

24  trustee of the Janneberg Marital and Residuary Trusts (collectively, "Janneberg");

25           12. Smittybilt, Inc. ("Smittybilt");

26           13. Southern California Edison Co. ("SCE")."

27       The term Settling Defendant is defined to include: (1) where the Settling

28  Defendant is a corporate entity, its officers, directors, shareholders, affiliates,

-7-

1    corporate successors and predecessors; (2) where the Settling Defendant is a

2    partnership, its partners; (3) where the Settling Defendant is a trust, its trustees and

3    beneficiaries; (4) where the Settling Defendant is a limited liability company, its

4    members and manager; (5) where the Settling Defendant is an individual, that

5    individual's heirs and beneficiaries, but only to the extent that such person or entity

6    within these above categories has no independent liability for the Site other than

7    liability derived from the person or entity's relationship to or affiliation with the

8    Settling Defendants.

9        y.    "Site" shall mean the South El Monte Operable Unit of the San Gabriel

10   Valley Area 1 Superfund Site, Los Angeles County, California and depicted generally

11   on the map attached as Appendix C.

12       z.    "United States" shall mean the United States of America, including its

13   departments, agencies and instrumentalities.

14       aa.   Water Entities" shall mean the San Gabriel Valley Water Quality

15   Authority, City of Monterey Park,  Golden State Water Company, and San Gabriel

16   Valley Water Company.

17                         V. **PAYMENT OF RESPONSE COSTS**

18       4.    a.    The Group of 10 Settling Defendants shall pay to the EPA

19   Hazardous Substance Superfund the sum of $3,350,000 within 60 days of the

20   Effective Date of this Consent Decree.

21            b.    The Group of 10 Settling Defendants shall pay the Department the

22   sum of $100,000 within 60 days of the Effective Date of this Consent Decree.

23       5.    Payment by the Group of 10 Settling Defendants to the EPA Hazardous

24   Substance Superfund shall be made by FedWire Electronic Funds Transfer ("EFT") to

25   the U.S. Department of Justice account in accordance with current EFT procedures,

26   referencing EPA Region IX and Site Spill ID Number 0927, and DOJ Case Number

27   90-11-2-354/5. Payment shall be made in accordance with instructions provided to

28   Group of 10 Settling Defendants by the Financial Litigation Unit of the U.S.

1   Attorney's Office in the Central District of California following lodging of the

2   Consent Decree.  Any payments received by the Department of Justice after 4:00 p.m.

3   Eastern Time shall be credited on the next business day.

4       6.     At the time of payment, Group of 10 Settling Defendants shall send

5   notice that payment has been made, to the United States, EPA and DOJ in accordance

6   with Section XIII (Notices and Submissions).

7       7.     The total amount to be paid pursuant to Paragraph 4.a shall be deposited

8   in the South El Monte Operable Unit Special Account within the EPA Hazardous

9   Substance Superfund to be retained and used to conduct or finance response actions

10  at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous

11  Substance Superfund.

12      8.     Payment by the Group of 10 Settling Defendants pursuant to Paragraph

13  4.b. shall be made within sixty (60) days of the Effective Date of this Consent Decree

14  by check payable to the California Department of Toxic Substances Control and

15  referring to the "San Gabriel Valley South El Monte Operable Unit."  The check

16  should be sent to:

> California Department of Toxic Substances Control
> Attention: Accounting Unit
> South El Monte OU, Project Code No. 300347
> P.O. Box 806
> Sacramento, California 95812-0806

20  A copy of the transmittal letter and a copy of the check shall be sent to the

21  DTSC's Cypress office at 5795 Corporate Avenue, Cypress, California 90630

22  Attention Ms. Jackie Spiszman.

23  ## VI. FAILURE TO COMPLY WITH CONSENT DECREE

24      9.     Interest on Late Payments.  If the Group of 10 Settling Defendants fails

25  to make any payment under Paragraph 5 by the required due date, Interest shall

26  continue to accrue on the unpaid balance through the date of payment.

27      10.    Stipulated Penalty.

28      a.     If any amounts due under Paragraph 5 are not paid by the required due

1  date, the Group of 10 Settling Defendants shall be in violation of this Consent Decree
2  and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph
3  9, $200 per day that any payment is late.

4      b.      Stipulated penalties are due and payable within 30 days of the date of the
5  demand for payment of the penalties by EPA or the Department. All payments to
6  EPA or the Department under this Paragraph shall be identified as "stipulated
7  penalties" and shall be made by certified or cashier's check made payable to "EPA
8  Hazardous Substance Superfund." The check, or a letter accompanying the check,
9  shall reference the name and address of the party(ies) making payment, the Site name,
10 EPA Region IX, and Site Spill ID Number 0927, and DOJ Case Number
11 90-11-2-354/5, and shall be sent to:

12              EPA Superfund
                US EPA
13              Region 9
                Attn: Superfund Accounting
14              P.O. Box 360863M
                Pittsburgh, PA 15251.

15     c.      At the time of the payment, the Group of 10 Settling Defendants shall
16 send notice that payment has been made, to the United States, EPA and DOJ and the
17 Department in accordance with Section XIII (Notices and Submissions).

18     d.      Penalties shall accrue as provided in this Paragraph regardless of
19 whether EPA or the Department has notified the Group of 10 Settling Defendants of
20 the violation or made a demand for payment, but need only be paid upon demand. All
21 penalties shall begin to accrue on the day after payment is due and shall continue to
22 accrue through the date of payment. Nothing herein shall prevent the simultaneous
23 accrual of separate penalties for separate violations of this Consent Decree.

24     11.     Intentionally Blank.

25     12.     Payments made under this Section shall be in addition to any other
26 remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure
27 to comply with the requirements of this Consent Decree.

28

-10-

1     13.    The obligations of the Group of 10 Settling Defendants to pay amounts

2 owed the United States and the Department under this Consent Decree are joint and

3 several.  In the event of the failure of any one or more the Group of 10 Settling

4 Defendants to make the payments required under this Consent Decree, the remaining

5 the Group of 10 Settling Defendants shall be responsible for such payments.

6     14.    Notwithstanding any other provision of this Section, the United States or

7 the Department may, in their unreviewable discretion, waive payment of any portion

8 of the stipulated penalties that have accrued pursuant to this Consent Decree.

9 Payment of stipulated penalties shall not excuse the Group of 10 Settling Defendants

10 from payment as required by Section VI or the Settling Defendants from performance

11 of any other requirements of this Consent Decree.

12         **VII.  COVENANT NOT TO SUE BY PLAINTIFFS**

13     15.   a.    <u>Covenant Not to Sue by the United States as to All Settling</u>

14 <u>Defendants</u>.  Except as specifically provided in Section VIII (Reservation of Rights

15 Plaintiffs), the United States covenants not to sue or to take administrative action

16 against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA, 42

17 U.S.C. §§ 9606 and 9607(a), for the IROD Work, Past Response Costs, and Future

18 IROD Response Costs.  With respect to present and future liability, this covenant not

19 to sue shall take effect upon receipt by Plaintiffs of all payments required by Section

20 VI (Payment of Response Costs) and any amount due under Section VII (Failure to

21 Comply with Consent Decree).  This covenant not to sue is conditioned upon the

22 satisfactory performance by Settling Defendants of their obligations under this

23 Consent Decree.  This covenant not to sue extends only to Settling Defendants and

24 does not extend to any other person.

25       b.    <u>Covenant Not to Sue by the Department as to All Settling</u>

26 <u>Defendants</u>.  Except as specifically provided in Section VIII (Reservation of Rights

27 Plaintiffs), the Department covenants not to sue or to take administrative action

28 against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA, 42

1  U.S.C. §§ 9606 and 9607(a), or Health and Safety Code Sections 25355.5, 25360, and
2  25323.5 for the IROD Work, Past Response Costs, and Future IROD Response Costs.
3  With respect to present and future liability, this covenant not to sue shall take effect
4  upon receipt by Plaintiffs of all payments required by Section VI (Payment of
5  Response Costs) and any amount due under Section VII (Failure to Comply with
6  Consent Decree). This covenant not to sue is conditioned upon the satisfactory
7  performance by Settling Defendants of their obligations under this Consent Decree.
8  This covenant not to sue extends only to Settling Defendants and does not extend to
9  any other person.

10      16.  a.      Additional Covenant Not to Sue by the United States as to the
11  Group of 10 Settling Defendants.  In addition, except as specifically provided in
12  Section VIII (Reservation of Rights by Plaintiffs), the United States covenants not to
13  sue or to take administrative action against the Group of 10 Settling Defendants
14  pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), for
15  the ESD Work and Future ESD Response Costs.  With respect to present and future
16  liability, this covenant not to sue shall take effect upon receipt by Plaintiffs of all
17  payments required by Section V (Payment of Response Costs) and any amount due
18  under Section VI (Failure to Comply with Consent Decree).  This covenant not to sue
19  is conditioned upon the satisfactory performance by the Group of 10 Settling
20  Defendants of their obligations under this Consent Decree.  This covenant not to sue
21  extends only to the Group of 10 Settling Defendants and does not extend to any other
22  person.

23          b.      Additional Covenant Not to Sue by the Department as to the
24  Group of 10 Settling Defendants.  In addition, except as specifically provided in
25  Section VIII (Reservation of Rights by Plaintiffs), the Department covenants not to
26  sue or to take administrative action against the Group of 10 Settling Defendants
27  pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), or
28  Health and Safety Code Sections 25355.5, 25360, and 25323.5 for the ESD Work and

-12-

1  Future ESD Response Costs.  With respect to present and future liability, this
2  covenant not to sue shall take effect upon receipt by Plaintiffs of all payments
3  required by Section V (Payment of Response Costs) and any amount due under
4  Section VI (Failure to Comply with Consent Decree).  This covenant not to sue is
5  conditioned upon the satisfactory performance by the Group of 10 Settling
6  Defendants of their obligations under this Consent Decree.  This covenant not to sue
7  extends only to the Group of 10 Settling Defendants and does not extend to any other
8  person.

9  ## VIII.   RESERVATION OF RIGHTS BY PLAINTIFFS

10       17.    The United States and the Department reserve, and this Consent Decree
11  is without prejudice to, all rights against Settling Defendants with respect to all
12  matters not expressly included within the Covenants Not to Sue by United States and
13  the Department in Paragraphs 15 and 16.  Notwithstanding any other provision of this
14  Consent Decree, the United States and the Department reserves all rights against
15  Settling Defendants with respect to:

16       a.     liability for failure of Settling Defendants to meet a requirement of this
17  Consent Decree;

18       b.     criminal liability;

19       c.     liability for damages for injury to, destruction of, or loss of natural
20  resources, and for the costs of any natural resource damage assessments;

21       d.     liability, based upon Settling Defendants' ownership or operation of the
22  Site, or upon Settling Defendants' transportation, treatment, storage, or disposal, or
23  the arrangement for the transportation, treatment, storage, or disposal, of a hazardous
24  substance or a solid waste at or in connection with the Site, after signature of this
25  Consent Decree by Settling Defendants;

26       e.     liability arising from the past, present, or future disposal, release or
27  threat of release of a hazardous substance, pollutant, or contaminant outside of the
28  Site;

-13-

1      f.    liability for performance of response action or for reimbursement of

2  response costs with respect to any other operable units of the San Gabriel Valley

3  Superfund Site, including but not limited to the response costs at the Whittier

4  Narrows Operable Unit;

5      g.    As to the Group of 10 Settling Defendants, liability for performance of

6  response action or for reimbursement of response costs with respect to any response

7  actions selected in any future response action decision documents for the Site, which

8  response actions are different from the activities required to implement the IROD

9  Work or the ESD Work;

10      h.    As to Settling Defendants other than Group of 10 Settling Defendants,

11  liability for performance of response action or for reimbursement of response costs

12  with respect to the ESD, the ESD Work, ESD Future Response Costs, and any

13  response actions selected in any future response action decision documents for the

14  Site, which response actions are different from the activities  required to implement

15  the IROD Work.

16      **IX.  <u>COVENANT NOT TO SUE BY SETTLING DEFENDANTS</u>**

17      18.    Settling Defendants covenant not to sue and agree not to assert any

18  claims or causes of action against the Plaintiffs or their contractors or employees,

19  with respect to the Site or this Consent Decree, including but not limited to:

20      a.    any direct or indirect claim for reimbursement from the Hazardous

21  Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of

22  CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other

23  provision of law;

24      b.    any claim arising out of response actions at or in connection with the

25  Site, including any claim under the United States Constitution, the California

26  Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28

27  U.S.C. § 2412, as amended, or at common law; or

28      c.    any claim against the Plaintiffs pursuant to Sections 107 and 113 of

-14-

1 CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the Site.

2 These covenants not to sue shall not apply in the event the United States or the

3 Department brings a cause of action or issues an order pursuant to the reservations set

4 forth in Paragraph 17 (c) - (h), but only to the extent that Settling Defendants' claims

5 arise from the same response action or response costs that the United States or the

6 Department is seeking pursuant to the applicable reservation.

7      19.   Nothing in this Consent Decree shall be deemed to constitute approval or

8 preauthorization of a claim within the meaning of Section 111 of CERCLA, 42

9 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

10      20.   Settling Defendants agree not to assert any CERCLA claims or causes of

11 action that they may have for all matters relating to the "matters addressed" as defined

12 in Paragraph 22, including for contribution, against any other person.  This waiver

13 shall not apply with respect to any defense, claim, or cause of action that a Settling

14 Defendant may have against any person if such person asserts a claim or cause of

15 action relating to the Site against such Settling Defendant.

16 **X.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION**

17      21.   Except as provided in Paragraph 20, nothing in this Consent

18 Decree shall be construed to create any rights in, or grant any cause of action to,

19 any person not a Party to this Consent Decree.  The preceding sentence shall not

20 be construed to waive or nullify any rights that any person not a signatory to this

21 Decree may have under applicable law.  Except as provided in Paragraph 20, the

22 Parties expressly reserve any and all rights (including, but not limited to, any

23 right to contribution), defenses, claims, demands, and causes of action which

24 they may have with respect to any matter, transaction, or occurrence relating in

25 any way to the Site against any person not a Party hereto.

26      22.   The Parties agree, and by entering this Consent Decree this Court

27 finds, that Settling Defendants are entitled, as of the date of entry of this

28 Consent Decree, to protection from contribution actions or claims as provided

1   by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters
2   addressed" in this Consent Decree. The "matters addressed" in this Consent
3   Decree as to all Settling Defendants are the IROD Work, Past Response Costs,
4   and Future IROD Response Costs. The "matters addressed" in this Consent
5   Decree as to the Group of 10 Settling Defendants are the IROD Work, Past
6   Response Costs, and Future IROD Response Costs, the ESD Work and Future
7   ESD Response Costs. The "matters addressed" in this Consent Decree do not
8   include those response costs or response actions as to which the Plaintiffs have
9   reserved their respective rights under this Consent Decree (except for claims for
10  failure to comply with this Decree), in the event that the United States or the
11  Department asserts rights against Settling Defendants coming within the scope
12  of such reservations.
13       23.    Each Settling Defendant agrees that, with respect to any suit or
14  claim for contribution brought by it for matters related to this Consent Decree, it
15  will notify EPA, DOJ, and the Department in writing no later than 60 days prior
16  to the initiation of such suit or claim. Each Settling Defendant also agrees that,
17  with respect to any suit or claim for contribution brought against it for matters
18  related to this Consent Decree, it will notify EPA, DOJ, and the Department in
19  writing within 30 days of service of the complaint or claim upon it. In addition,
20  each Settling Defendant shall notify EPA, DOJ, and the Department within 30
21  days of service or receipt of any Motion for Summary Judgment, and within 30
22  days of receipt of any order from a court setting a case for trial, for matters
23  related to this Consent Decree.
24       24.    In any subsequent administrative or judicial proceeding initiated by
25  the Plaintiffs for injunctive relief, recovery of response costs, or other relief
26  relating to the Site, Settling Defendants shall not assert, and may not maintain,
27  any defense or claim based upon the principles of waiver, *res judicata*,
28  collateral estoppel, issue preclusion, claim-splitting, or other defenses based

-16-

1  upon any contention that the claims raised by the Plaintiffs in the subsequent
2  proceeding were or should have been brought in the instant case; provided,
3  however, that nothing in this Paragraph affects the enforceability of the
4  Covenant Not to Sue by Plaintiffs set forth in Section VIII.

## XI.  ACCESS AND INSTITUTIONAL CONTROLS

6      25.   If the Site, or any other property where access and/or land/water
7  use restrictions are needed to implement response activities at the Site, is owned
8  or controlled by any of the Owner Settling Defendants, such Owner Settling
9  Defendants shall:

10      a.    commencing on the date of lodging of this Consent Decree, provide
11  the Plaintiffs and their representatives, including EPA the Department and their
12  contractors, with access at all reasonable times to the Site, or such other
13  property, for the purpose of conducting any response activity related to the Site,
14  including, but not limited to, the following activities:

15      i.    Monitoring, investigation, removal, remedial or other
16            activities at the Site;

17      ii.   Verifying any data or information submitted to the United
18            States;

19      iii.  Conducting investigations relating to contamination at or
20            near the Site;

21      iv.   Obtaining samples;

22      v.    Assessing the need for, planning, or implementing additional
23            response actions at or near the Site;

24      vi.   Inspecting and copying records, operating logs, contracts, or
25            other documents maintained or generated by Settling
26            Defendants or their agents, consistent with Section VII
27            (Access to Information);

28      vii.  Assessing Settling Defendants' compliance with this

-17-

1    Consent Decree; and

2    viii.   Determining whether the Site or other property is being used

3    in a manner that is prohibited or restricted, or that may need

4    to be prohibited or restricted, by or pursuant to this Consent

5    Decree;

6    b.    commencing on the date of lodging of this Consent Decree, refrain

7    from using the Site, or such other property, in any manner that would interfere

8    with or adversely affect the implementation, integrity or protectiveness of the

9    remedial measures to be  performed at the Site.

10    26.   If the Department or EPA determines that institutional controls in

11    any form are required to implement response activities at the Site, or ensure the

12    integrity and protectiveness thereof, or ensure non-interference therewith,

13    Owner Settling Defendants shall execute and record all such necessary legal

14    instruments, and will fully cooperate with the Department and with EPA in their

15    efforts to secure and enforce such institutional controls.  Institutional controls

16    shall include deed restrictions, land use covenants, environmental restrictions,

17    as well as any layers of additional  protection in the form of state or local laws,

18    regulations, ordinances or other governmental instruments that serve the

19    purpose of institutional controls set forth above.

20    27.   Notwithstanding any provision of this Consent Decree, the United

21    States and the Department retain all of their access authorities and rights, as

22    well as all of their rights to require land/water use restrictions, including

23    enforcement authorities related thereto, under CERCLA, RCRA, and any other

24    applicable statute or regulations.

25    ## XII. ACCESS TO INFORMATION

26    28.   Settling Defendants shall provide to EPA and the Department,

27    upon request, copies of all records, reports, or information (hereinafter referred

28    to as "records") within their possession or control or that of their contractors or

-18-

1  agents relating to activities at the Site, including, but not limited to, sampling,
2  analysis, chain of custody records, manifests, trucking logs, receipts, reports,
3  sample traffic routing, correspondence, or other documents or information
4  related to the Site.

5        29.   Confidential Business Information and Privileged Documents.

6        a.   Settling Defendants may assert business confidentiality claims
7  covering part or all of the records submitted to EPA under this Consent Decree
8  to the extent permitted by and in accordance with Section 104(e)(7) of
9  CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records
10 determined to be confidential by EPA will be accorded the protection specified
11 in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies
12 records when they are submitted to EPA, or if EPA has notified Settling
13 Defendants that the records are not confidential under the standards of Section
14 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given
15 access to such records without further notice to Settling Defendants.

16       b.   Settling Defendants may assert that certain records are privileged
17 under the attorney-client privilege or any other privilege recognized by federal
18 law.  If Settling Defendants assert such a privilege in lieu of providing records,
19 they shall provide Plaintiffs with the following:  1) the title of the record; 2) the
20 date of the record; 3) the name and title of the author of the record; 4) the name
21 and title of each addressee and recipient; 5) a description of the subject of the
22 record; and 6) the privilege asserted.  However, no records created or generated
23 pursuant to the requirements of this or any other settlement with the United
24 States shall be withheld on the grounds that they are privileged.

25       30.   No claim of confidentiality shall be made with respect to any data,
26 including but not limited to, all sampling, analytical, monitoring, hydrogeologic,
27 scientific, chemical, or engineering data, or any other records evidencing
28 conditions at or around the Site.

-19-

## XIII. RETENTION OF RECORDS

31.    Until 10 years after the entry of this Consent Decree, each Settling Defendant shall preserve and retain all records now in its possession or control, or which come into its possession or control, that relate in any manner to response actions taken at the Site or the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary.

32.    After the conclusion of the document retention period in the preceding Paragraph, Settling Defendants shall notify Plaintiffs at least 90 days prior to the destruction of any such records, and, upon request by Plaintiffs, Settling Defendants shall deliver any such records to Plaintiffs.  Settling Defendants may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege, they shall provide Plaintiffs with the following:  1) the title of the record; 2) the date of the record; 3) the name and title of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted.  However, no records created or generated pursuant to the requirements of this or any other settlement with the Plaintiffs shall be withheld on the grounds that they are privileged.

33.    Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after reasonable inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or information relating to its potential liability regarding the Site since notification of potential liability by the United States or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XIV. <u>NOTICES AND SUBMISSIONS</u>

34.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses listed in Appendix D, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DOJ, the Department, and Settling Defendants, respectively.

## XV. <u>RETENTION OF JURISDICTION</u>

35.    This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVI. <u>INTEGRATION/APPENDICES</u>

36.    This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

37.    The following appendices are attached to and incorporated into this Consent Decree:

Appendix A is the IROD;

Appendix B is  the ESD;

Appendix C the map of the Site; and

Appendix D is the list of Addresses for Notices Pursuant to Section XIV (Notices and Submissions).

## XVII. <u>LODGING AND OPPORTUNITY FOR PUBLIC COMMENT</u>

38.    This Consent Decree shall be lodged with the Court for a period of

1  not less than 30 days for public notice and comment.  The United States

2  reserves the right to withdraw or withhold its consent if the comments regarding

3  the Consent Decree disclose facts or considerations which indicate that this

4  Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants

5  consent to the entry of this Consent Decree without further notice.

6       39.    If for any reason this Court should decline to approve this Consent

7  Decree in the form presented, this agreement is voidable at the sole discretion of

8  any party and the terms of the agreement may not be used as evidence in any

9  litigation between the Parties.

10                        **XVIII.  SIGNATORIES/SERVICE**

11      40.    Each undersigned representative of a Settling Defendant to this

12  Consent Decree and the Assistant Attorney General for the Environment and

13  Natural Resources Division of the United States Department of Justice certifies

14  that he or she is authorized to enter into the terms and conditions of this Consent

15  Decree and to execute and bind legally such Party to this document.

16      41.    Each Settling Defendant hereby agrees not to oppose entry of this

17  Consent Decree by this Court or to challenge any provision of this Consent

18  Decree, unless the United States has notified Settling Defendants in writing that

19  it no longer supports entry of the Consent Decree.

20      42.    Each Settling Defendant shall identify, on the attached signature

21  page, the name and address of an agent who is authorized to accept service of

22  process by mail on behalf of that Party with respect to all matters arising under

23  or relating to this Consent Decree.  Settling Defendants hereby agree to accept

24  service in that manner and to waive the formal service requirements set forth in

25  Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of

26  this Court, including but not limited to, service of a summons.  The Parties

27  agree that Settling Defendants need not file an answer to the complaint in this

28  action unless or until the Court expressly declines to enter this Consent Decree.

## XIX.  FINAL JUDGMENT

43.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the Plaintiffs and the Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XX.  CONTINGENCY OF GOOD FAITH SETTLEMENT

44.    Each of the Plaintiffs and Group of 10 Settling Defendants acknowledges that the Water Entities and Group of 10 Settling Defendants intend to serve and file a Motion determining under the standards in Code of Civil Procedure section 877.6, or similar Federal statutes or guidelines, that the settlement between the Group of 10 Settling Defendants and Water Entities ("Settlement Agreement") in *San Gabriel Basin Water Quality Authority v. Aerojet-General Corporation, et al.*, Case No. CV 02-4565 ABC (RCx); *San Gabriel Valley Water Company v. Aerojet-General Corporation, et al.*, Case No. CV 02-6346 ABC (RCx); *Southern California Water Company v. Aerojet-General Corporation, et al.*, Case No. CV 02-6340 ABC (RCx); and *City of Monterey Park v. Aerojet-General Corporation, et al.*, Case No. CV 02-5909 ABC (RCx) (collectively, "SEMOU Litigation") is in good faith (hereafter "Good Faith Order").  Entry and approval of this Consent Decree and the Good Faith Order by the Court, or such other order or judgment as is provided in Section XXI, shall be a condition for each party's performance of this Consent Decree. If a Good Faith Order is not entered by the Court and affirmed, if necessary, as provided in Section XXI, then this Consent Decree shall be null and void.

## XXI.  EFFECTIVE DATE

45.    The Effective Date of this Consent Decree is the later date of the following two dates:

1         (1) (i) the date of a Good Faith Order in the SEMOU

2   Litigation, and such Good Faith Order has not been

3   appealed or petitioned to the Ninth Circuit Court of

4   Appeals; or (ii) in the event of any appeal or challenge

5   to the Good Faith Order in any other forum or venue,

6   the date of a final order from such forum or venue

7   either denying such appeal or challenge or upholding

8   the Good Faith Order.

9

10         (2) (i) the date of approval of this Consent Decree by a

11   United States District Court, and such approval of a

12   Consent Decree has not been appealed or petitioned to

13   the Ninth Circuit Court of Appeals; or (ii) in the event

14   of any further appeal or challenge to the Consent

15   Decree in any other forum or venue, the date of a final

16   order from such forum or venue either denying such

17   appeal or challenge or upholding the Consent Decree.

18

19

20   SO ORDERED.

21

22   Apr. 10, 2008

23   Date

               Audrey B. Collins

         UNITED STATES DISTRICT JUDGE

24

25

26

27

28

1  THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al.</u>
2  <u>v. Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel
   Valley Superfund Site.

3

4

5  FOR THE UNITED STATES OF AMERICA, DOJ:

6

7                              GEORGE S. CARDONA
                               United States Attorney
8                              LEON W. WEIDMAN
                               Chief, Civil Division
9                              MONICA MILLER
                               Assistant United States Attorney
10                             Central District of California
                               300 North Los Angeles Street
11                             Los Angeles, California 90012
                               Telephone: (213) 894-4061
12

13

14  12 October 2007
    Date                       RONALD J. TENPAS
15                             Acting Assistant Attorney General
                               Environment and Natural Resources Division
16                             U.S. Department of Justice
                               Washington, D.C.  20530
17

18
    Oct 1, 2007
19  Date                       STEVEN O'ROURKE
                               Environmental Enforcement Section
20                             Environment and Natural Resources Division
                               U.S. Department of Justice
21                             P.O. Box 7611
                               Washington, D.C.  20044-7611
22

23

24

25

26

27

28

                                  -25-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al.</u> <u>v. Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel Valley Superfund Site.

FOR THE UNITED STATES OF AMERICA, EPA:

9-18-07
Date

KEITH TAKATA
Director of the Superfund Division
United States Environmental Protection
  Agency
Region 9
75 Hawthorne Street
San Francisco, CA  94105

10/17/07
Date

JAMES COLLINS
Assistant Regional Counsel
United States Environmental Protection
  Agency
Region 9
75 Hawthorne Street
San Francisco, CA  94105

1  THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al.</u>
2  <u>v. Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel
3  Valley Superfund Site.

4

5  FOR THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL, and
   CALIFORNIA ATTORNEY GENERAL
6

7  *9/18/07*

8  Date                                   Dr. Rebecca Chou, Chief
                                          Southern California Cleanup Operations Branch
9                                         Cypress Office
                                          Department of Toxic Substances Control
10                                        5796 Corporate Avenue
                                          Cypress, California 90630
11

12  *9-24-07*

13  Date                                  Ann Rushton
                                          Deputy Attorney General
14                                        California Department of Justice
                                          300 South Spring Street
15                                        Los Angeles, California 90013

16

17

18

19

20

21

22

23

24

25

26

27

28

1   THE UNDERSIGNED PARTY enters into this Consent Degree in the matter of <u>United</u>
    <u>States, et al. v. Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of
2   the San Gabriel Valley Superfund Site.

3

4   FOR ANDRUSS:

5

6   DATED: _3-9-2006_                Signature: _James Ralph Andruss_
                                      Name (print): _James Ralph Andruss_
7                                     Title: _Trustee_
                                      Address: _2106 Fremont Ave._
8                                     _Placentia, CA_
                                      _92870_
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28
-28- 27a

1    THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United
2 States, et al. v. Andruss Family Trust, et al., relating to the South El Monte Operable Unit of the
   San Gabriel Valley Superfund Site.

3

4

5   DATE: _3/10/2006_                           APW NORTH AMERICA INC.
                                                (f/k/a Zero Corporation)
6
                                                Signature _Rhonda M Matschke_
7                                               Name (print): _RHONDA MATSCHKE_
8                                               Title: _VICE PRESIDENT & SECRETARY_
9                                               Address: _____
10                                              _N22 W23685 RIDGEVIEW PKWY W_
                                                _WAUKESHA, WI  53188-1013_
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        29
                                     _x 276_

1  THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al.</u>
2  <u>v. Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel
   Valley Superfund Site.

3

4  FOR CARDINAL INDUSTRIAL FINISHES:

5

6  DATE: <u>March 14,</u> 2006                    Signature:  _Lawrence C. Felix_
                                                 Name (print): <u>Lawrence C. Felix</u>
7                                                Title:       <u>Director of Corporate Affairs</u>
                                                 Address:     <u>1329 Potrero Ave</u>
8                                                             <u>South El Monte, CA 91733</u>
9                                                             _____
                                                             _____
10

11

12 FOR CARDCO:

13

14 DATE: <u>March 14,</u> 2006                    Signature:  _Lawrence C. Felix_
                                                 Name (print): <u>Lawrence C. Felix</u>
15                                               Title:       <u>Director of Corporate Affairs</u>
                                                 Address:     <u>1329 Potrero Ave.</u>
16                                                            <u>South El Monte, CA 91733</u>
17                                                            _____
                                                            _____
18

19

20

21

22

23

24

25

26

27

28

1    THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al.</u>
     <u>v. Andruss Family Trust, et al.,</u> relating to the South El Monte Operable Unit of the San Gabriel
2    Valley Superfund Site:

3

     FOR ARTISTIC POLISHING AND PLATING, INC.:
4

5    DATE: 3/31/06              Signature:    Mona Sue Art
                                Name (print): Mona Sue Art
6                               Title:        President
                                Address:      2694 East Garvey Avenue, #315
7                                             West Covina, CA 91791

8
     FOR ART 1981 REVOCABLE LIVING MARITAL DEDUCTION TRUST; SUE ART AS
9    TRUSTEE OF ART 1981 REVOCABLE LIVING MARITAL DEDUCTION TRUST

10   DATE: 3/31/06              Signature:    Mona Sue Art
                                Name (print): Mona Sue Art
11                              Title:        Trustee
                                Address:      2694 East Garvey Avenue, #315
12                                            West Covina, CA 91791

13
     FOR ART 1981 REVOCABLE LIVING EXEMPTION TRUST; SUE ART AS TRUSTEE OF ART
14   1981 REVOCABLE LIVING EXEMPTION TRUST

15   DATE: 3/31/06              Signature:    Mona Sue Art
                                Name (print): Mona Sue Art
16                              Title:        Trustee
                                Address:      2694 East Garvey Avenue, #315
17                                            West Covina, CA 91791

18

19

20

21

22

23

24

25

26

27

28

1 | THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al. v.</u>
2 | <u>Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel Valley
   | Superfund Site.
3
4
   | **FOR DURHAM TRANSPORTATION:**
5
6
7 | DATE: 3-15-06                     Signature: _Larry K. Durham_
8 |                                   Name (print): _Larry K. Durham_
   |                                   Title: _General Partner_
   |                                   Address: _Durham family L.P._
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-30-

1    THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al. v.</u>
2    <u>Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel Valley
     Superfund Site.
3

4    EEMUS MANUFACTURING CORPORATION:
5

6

7    DATE: 3-9-06
8                              Signature:    _____
     Name (print):  Gitte Simonian
9    Title:         Corporate Secretary
     Address:       11111 Rush Street
10                  So. El Monte, CA 91733

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-30-

1   THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al. v.</u>

2   <u>Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel Valley Superfund Site.

3

4

   FOR J.A.B. HOLDINGS:

5

6

7

   DATE:   3/27/06

8                               Signature:
Name (print):   Robert J. Bozung

9                                Title:   President
Address:   3067 Old Coach, Camarillo, Ca

10                                                      93010

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al. v.</u>
2   <u>Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel Valley
    Superfund Site.

3

4

    FOR JEBBIA TRUST:

5

6   DATE:   3/10/06              Signature:   _Gloria Jebbia, Trustee_
7                                Name (print): _Gloria Jebbia_
                                 Title:       _Trustee, Don James Jebbia Trust_
8                                Address:     _2468 Huntington Drive_
                                              _San Marino, CA. 91108_
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al. v.</u>

2   <u>Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel Valley
   Superfund Site.

3

4

5   FOR IMS, LTD.:

6

7   DATE: _March 14, 2006_     Signature: _David W. Nassif_

8                             Name (print): _David W. Nassif_
                             Title: _Chief Financial Officer_

9                             Address: _c/o Amphastar_

10                                     _11570 6th Street_
                                     _Rancho Cucamonga, CA 91730_

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al. v.</u>

2   <u>Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel Valley
   Superfund Site.

3

4   FOR ROC-AIRE CORPORATION:

5

6

7   DATE: 3 / 8 / 06

8                       Signature: _Thomas Z. Collins_
                         Name (print): THOMAS L. Collins
                         Title: PRESIDENT

9                       Address: 9710 KLINGERMAN ST.
                         So EL MONTE, CA 91733

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United</u>
2   <u>States, et al. v. Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the
    San Gabriel Valley Superfund Site.
3
4   DATE: _____3/10/2006_____          ELECTRONIC SOLUTIONS
5                                       Signature _Rhonda M Matschke_
6                                       Name (print): _RHONDA MATSCHKE_
7                                       Title: _VICE PRESIDENT_
8                                       Address: _____
9                                       _N22 W23685 RIDGEVIEW PKWY W_
                                        _WAUKESHA, WI 53188-1013_
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al. v.</u>
2    <u>Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel Valley
     Superfund Site.
3

4

     FOR SERVEX CORPORATION; Janneberg Marital Trust, as successor to Servex
5    Corporation; Janneberg Residuary Trust, as successor to Servex Corporation;
6    Baerbel Janneberg, as Trustee of the Janneberg Marital and Residuary Trusts:

7
     DATE: March 14, 2006          Signature:    Baerbel Jannel
8                                  Name (print): Baerbel J Vanneberg
9                                  Title:        Co-Trustee Janneberg Marital
                                   Address:      and Residuary Trust
10                                               20774 Rancho La Floresta Rd.
                                                 Covina, CA 91724
11

12

13

14

15   DATE: _____          Signature:    _____
16                                   Name (print): _____
                                     Title:        _____
17                                   Address:      _____
18                                                 _____
19                                                 _____

20

21

22

23

24

25

26

27

28

1  THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al. v.</u>
2  <u>Andruss Family Trust, et al.,</u> relating to the South El Monte Operable Unit of the San Gabriel Valley
   Superfund Site.
3

4
   FOR SERVEX CORPORATION; Janneberg Marital Trust, as successor to Servex
5  Corporation; Janneberg Residuary Trust, as successor to Servex Corporation;
   Baerbel Janneberg, as Trustee of the Janneberg Marital and Residuary Trusts:
6

7
   DATE:_____          Signature:  _____
8                                 Name (print): _____
                                  Title:       _____
9                                 Address:     _____
                                               _____
10                                             _____
                                               _____
11

12

13

14

15  DATE:  3/9/06               Signature:   _Michl C. Agran_
                                Name (print): _Michael C. Agran_
16                              Title:        _co - Trustee_
                                Address:      _10960 Wilshire Blvd._
17                                            _Suite 1225_
                                              _Los Angeles, CA 80024_
18

19

20

21

22

23

24

25

26

27

28

                                      =36=

1   THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al. v.</u>
<u>Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel Valley

2   Superfund Site.

3

4

   FOR SMITTYBILT, Inc.:

5

6

7   DATE: 3/14/06

Signature:
Name (print):
Title:
Address:

8   STEPHEN S. TREICHEL

9   PRESIDENT

10   3700 CRESTWOOD PKWY NW

11   SUITE TWO

12   DULUTH, GA 30096

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-37-

1  THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States, et al. v.</u>
2  <u>Andruss Family Trust, et al.</u>, relating to the South El Monte Operable Unit of the San Gabriel Valley
   Superfund Site.
3

4
   FOR SOUTHERN CALIFORNIA EDISON COMPANY:
5

6

7  DATE: March 13, 2006    Signature: _____
8                          Name (print):  Stephen E. Pickett
                           Title:    Senior Vice President
9                          Address:  and General Counsel
10                                   2244 Walnut Grove Avenue
                                     Rosemead, California 91770
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-38-

.42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Appendix A**

**Interim Record of Decision**

Attachment 2 to Administrative Order 2003-17

# INTERIM RECORD OF DECISION

## SAN GABRIEL VALLEY SUPERFUND SITE

## SOUTH EL MONTE OPERABLE UNIT

## LOS ANGELES COUNTY, CALIFORNIA

September 2000

United States Environmental Protection Agency

Region IX - San Francisco, California

44

# Contents

|  |  | Page |
|---|---|---|
| **Part I - Declaration** .................................................................... | | I-1 |
| 1.1 | Site Name and Location ................................................... | I-1 |
| 1.2 | Statement of Basis and Purpose .......................................... | I-1 |
| 1.3 | Assessment of the Site .................................................. | I-1 |
| 1.4 | Description of the Selected Remedy ...................................... | I-1 |
| 1.5 | Statutory Determinations ................................................ | I-2 |
| 1.6 | ROD Data Certification Checklist ........................................ | I-2 |
| **Part II - Decision Summary** ............................................. | | II-1-1 |
| **1** | **Site Name, Location and Description** ......................... | II-1-1 |
| 1.1 | Site Description ......................................................... | II-1-1 |
| **2** | **Site History and Enforcement Activities** ................... | II-2-1 |
| 2.1 | Site History ............................................................. | II-2-1 |
| 2.2 | Remedial Investigation Activities ....................................... | II-2-1 |
| 2.3 | Enforcement Activities .................................................. | II-2-2 |
| **3** | **Community Participation** ................................................ | II-3-1 |
| **4** | **Scope and Role of Operable Unit** ...................................... | II-4-1 |
| **5** | **Site Characteristics** ................................................... | II-5-1 |
| 5.1 | Location and Topography ................................................. | II-5-1 |
| 5.2 | Surface Water ........................................................... | II-5-1 |
| 5.3 | Geology ................................................................... | II-5-2 |
| | 5.3.1 San Gabriel Basin .................................................. | II-5-2 |
| | 5.3.2 South El Monte OU ................................................. | II-5-2 |
| 5.4 | Hydrogeology ............................................................ | II-5-3 |
| | 5.4.1 San Gabriel Basin .................................................. | II-5-3 |
| | 5.4.2 South El Monte OU ................................................. | II-5-3 |
| 5.5 | Groundwater Management ................................................ | II-5-4 |
| | 5.5.1 San Gabriel Basin Judgment ....................................... | II-5-5 |
| | 5.5.2 Long Beach Judgment .............................................. | II-5-5 |
| 5.6 | Groundwater Contamination ............................................. | II-5-5 |
| **6** | **Current and Potential Future Site and Resource Uses** ........... | II-6-1 |
| 6.1 | Land Uses ............................................................... | II-6-1 |
| 6.2 | Groundwater Uses ...................................................... | II-6-1 |
| **7** | **Summary of Site Risks** ................................................. | II-7-1 |
| 7.1 | Summary of Human Health Risk Assessment .......................... | II-7-1 |
| | 7.1.1 Identification of Chemicals of Concern ........................... | II-7-1 |
| | 7.1.2 Exposure Assessment ............................................. | II-7-2 |
| | 7.1.3 Toxicity Assessment .............................................. | II-7-2 |
| | 7.1.4 Risk Characterization ............................................ | II-7-3 |
| 7.2 | Summary of Ecological Risk Assessment .............................. | II-7-4 |

i

Page

7.2    Conclusion   ................................................................   II-7-5

**8    Remediation Objectives   ...........................................   II-8-1**

**9    Description of Alternatives   .......................................   II-9-1**
9.1    Alternative 1  No Action   ........................................   II-9-1
9.2    Alternative 2  Groundwater Monitoring (No Active Response)   ........   II-9-1
       9.2.1    Monitoring   ............................................   II-9-1
9.3    Alternative 3  Intermediate Zone Control in Western South El Monte OU   ..........   II-9-2
       9.3.1    Extraction   ............................................   II-9-2
       9.3.2    Treatment   ............................................   II-9-2
       9.3.3    Conveyance and Discharge   ...............................   II-9-2
       9.3.4    Monitoring   ............................................   II-9-3
9.4    Alternative 4  Intermediate Zone Control in Western South El Monte
       OU and Shallow Zone Source Control   .............................   II-9-3
       9.4.1    Extraction   ............................................   II-9-3
       9.4.2    Treatment   ............................................   II-9-3
       9.4.3    Conveyance and Discharge   ...............................   II-9-3
       9.4.4    Monitoring   ............................................   II-9-4

**10    Comparative Analysis of Alternatives   ...........................   II-10-1**
       Threshold Criteria   .............................................   II-10-1
       Primary Balancing Criteria   .....................................   II-10-1
       Modifying Criteria   .............................................   II-10-1
10.1   Overall Protection of Human Health and the Environment   ..........   II-10-2
       10.1.1 Overall Protection of Human Health and the Environment:
              Evaluation of Alternatives   .............................   II-10-2
10.2   Compliance with ARARs   .........................................   II-10-2
       10.2.1 Compliance with ARARs:  Evaluation of Alternatives   .......   II-10-2
10.3   Long-Term Effectiveness   .......................................   II-10-3
       10.3.1 Long-Term Effectiveness and Permanence:
              Evaluation of Alternatives   .............................   II-10-3
10.4   Reduction of Toxicity, Mobility, and Volume Through Treatment   ...   II-10-3
       10.4.1 Reduction of Toxicity, Mobility, or Volume Through Treatment:
              Evaluation of Alternatives   .............................   II-10-4
10.5   Short-Term Effectiveness   ......................................   II-10-4
       10.5.1 Short-Term Effectiveness:  Evaluation of Alternatives   ....   II-10-4
10.6   Implementability   ..............................................   II-10-5
       10.6.1 Implementability:  Evaluation of Alternatives   ...........   II-10-5
10.7   Cost   .........................................................   II-10-6
       10.7.1 Cost:  Evaluation of Alternatives   ......................   II-10-7
       10.7.2 Cost:  Comparison of Alternatives   ......................   II-10-7
10.8   State Acceptance   ..............................................   II-10-7
10.9   Community Acceptance   ..........................................   II-10-7

Page

11  Selected Remedy .............................................................. II-11-1
    11.1  Description of the Selected Remedy ..................................... II-11-1
          11.1.1  Performance Criteria ........................................... II-11-2
          11.1.2  Compliance with Performance Criteria ........................... II-11-2
          11.1.3  Supplemental Explanation of Performance Criteria ............... II-11-3

    11.2  Summary of Estimated Costs ........................................... II-1-5

    11.3  Expected Outcomes of the Selected Remedy ............................. II-11-6

12  Applicable or Relevant and Appropriate Requirements (ARARs) ............... II-12-1
    12.1  Chemical-specific ARARs .............................................. II-12-2
          12.1.1  Federal Drinking Water Standards ............................... II-12-2
          12.1.2  California Drinking Water Standards ............................ II-12-3
    12.2  Location-specific ARARs .............................................. II-12-3
          12.2.1  Location Standards for TSD Facilities .......................... II-12-3
          12.2.2  Endangered Species Act ......................................... II-12-3
          12.2.3  California Fish and Game Code .................................. II-12-3
          12.2.4  National Historic Preservation Act ............................. II-12-4
          12.2.5  Archaeological and Historic Preservation Act ................... II-12-4
          12.2.6  Historic Sites, Buildings, and Antiquities Act ................. II-12-4
    12.3  Action-specific ARARs ................................................ II-12-4
          12.3.1  Local Air Quality Management ................................... II-12-4
          12.3.2  Federal Clean Water Act and California Porter-Cologne Water Quality Act .... II-12-5
          12.3.3  California Hazardous Waste Management Program ................... II-12-6
    12.4  ARARs Waivers ........................................................ II-12-7

13  Statutory Determinations ................................................. II-13-1
    13.1  Protection of Human Health and the Environment ....................... II-13-1
    13.2  Compliance with ARARs ................................................ II-13-1
    13.3  Cost-Effectiveness ................................................... II-13-1
    13.4  Utilization of Permanent Solutions and Alternative Treatment
          Technologies to the Maximum Extent Practicable ....................... II-13-2
    13.5  Preference for Treatment as a Principal Element ...................... II-13-2
    13.6  Five-Year Reviews .................................................... II-13-2

14  Documentation of Significant Changes ..................................... II-14-1

Part III - Responsiveness Summary ............................................ III-1-1

1   Responses to Written Comments ............................................ III-1-1
    1.1  Responses to Comments from the City of Monterey Park .................. III-1-1
    1.2  Responses to Comments from the City of Pico Rivera ................... III-1-2
    1.3  Responses to Comments from the City of South El Monte ................ III-1-3
    1.4  Responses to Comments from the Main San Gabriel Basin Watermaster ..... III-1-3
    1.5  Responses to Comments from the San Gabriel Basin Water Quality Authority ..... III-1-4
    1.6  Responses to Comments from the Upper San Gabriel Valley
         Municipal Water District (USGVMWD) ................................... III-1-5

**Page**

1.7   Responses to Comments from the Southeast Water Coalition (SEWC) .............. III-1-6
1.8   Responses to Comments from the Water Replenishment District
      of Southern California (WRD) .................................................. III-1-8
1.9   Responses to Comments from the San Gabriel Valley Water Company .............. III-1-9
1.10  Responses to Comments from the Southern California
      Water Company (SCWC) ...................................................... III-1-11
1.11  Responses to Comments from South El Monte Businesses (Group A) ............. III-1-13
1.12  Responses to Comments from South El Monte Businesses (Group B) ............. III-1-18
1.13  Responses to Comments from South El Monte Businesses (Group C) ............. III-1-19
1.14  Responses to Comments from Art Weiss Industrial Properties .................. III-1-20
1.15  Responses to Comments from EEMUS Manufacturing Corp. ...................... III-1-21
1.16  Responses to Comments from Aircraft Stamping Co., Inc.
      ......................................................................... III-1-22
1.17  Responses to Comments from Mr. Robert Vanderbosch .......................... III-1-23
1.18  Responses to Comments from Geosystem Consultants, Inc.
      (representing the South El Monte OU Participants) ........................... III-1-24
1.19  Responses to Comments from R Brown ........................................ III-1-28
1.20  Responses to Comments from Mr. Allan Hill .................................. III-1-30
1.21  Responses to Comments from Congressman Matthew G. Martinez ................ III-1-30

2   **Responses to Oral Comments** ................................................. III-2-1
2.1  Responses to Comments from Mr. Royal Brown .................................. III-2-1
2.2  Responses to Comments from Mr. Philip Miller, Geosystem Consultants, Inc.
     (representing the South El Monte OU Participants) ............................ III-2-3
2.3  Responses to Comments from Mr. Bill Robinson, Upper San Gabriel
     Valley Municipal Water District (USGVMWD) .................................. III-2-5
2.4  Responses to Comments from Mr. Kirby Brill,
     San Gabriel Basin Water Quality Authority .................................. III-2-6
2.5  Responses to Comments from Mr. Larry Felix, South El Monte OU Participants ...... III-2-7

**References**                                                                      R-1

**Tables**
1   Summary of Chemicals of Concern and Exposure Point Concentrations in Groundwater
2   Toxicity Values for Chemicals of Concern
3a  Estimated Total Excess Lifetime Cancer Risk from Potential Current Domestic Use of Groundwater
3b  Estimated Total Excess Lifetime Cancer Risk from Potential Future Domestic Use of Groundwater
4a  Estimated Total Noncancer Hazard Index from Potential Current Domestic Use of Groundwater
4b  Estimated Total Noncancer Hazard Index from Potential Future Domestic Use of Groundwater
5   Cost Comparison of Alternatives
6   Chemicals of Potential Concern
7   Detailed Cost Estimates for the Selected Remedy

**Figures**
1   Location Map of South El Monte Operable Unit
2   1998 Shallow VOC Contamination
3   1998 Deep VOC Contamination
4   Alternative Evaluation Matrix
5   Particle Tracking Results, Modified Alternative 3

# Part I
# Declaration

# Part I - Declaration

## 1.1   Site Name and Location

This Interim Record of Decision (ROD) addresses groundwater contamination at the South El Monte Operable Unit (South El Monte OU) located within the San Gabriel Valley Superfund Site Area 1 in Los Angeles County, California. The San Gabriel Valley Superfund Site Area 1 has a CERCLIS ID CAD980677355.

## 1.2   Statement of Basis and Purpose

This ROD presents the selected interim remedial action for the South El Monte OU of the San Gabriel Valley Superfund Site in accordance with the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601 et. seq., as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA) (collectively referred to herein as CERCLA) and to the extent practicable, the National Oil and Hazardous Substances Pollution Contingency Plan, 40 CFR Part 300 (NCP). This decision is based on the Administrative Record for this site.

The State of California, acting through the California Department of Toxic Substances Control (DTSC) and the Los Angeles Regional Water Quality Control Board (LARWQCB), concur with the selected remedy.

## 1.3   Assessment of the Site

The U.S. Environmental Protection Agency (EPA) has determined that volatile organic compounds (VOCs) have been released into groundwater within the South El Monte OU, and that a substantial threat of release to groundwater still exists. The response action selected in this ROD is necessary to protect the public health or welfare or the environment from actual or threatened releases of hazardous substances into the environment.

## 1.4   Description of the Selected Remedy

This interim action ROD addresses groundwater contaminated with VOCs. EPA's objective is to protect human health and the environment. The selected remedy is containment of groundwater contaminated with VOCs in the intermediate zone in the western portion of the South El Monte OU. This remedy includes performance criteria that will require extraction and treatment of contaminated groundwater at certain locations along the downgradient edge of the contamination, and other locations, as necessary, and will require continued monitoring and evaluation at other locations. The treated groundwater is expected to be delivered to local water purveyors, although other discharge options may be evaluated. In addition, this remedy includes monitoring in the shallow and intermediate groundwater zones in the South El Monte OU. Although it is not a component of the South El Monte OU interim remedy, EPA's planned remedy in the adjacent downgradient Whittier Narrows OU will play an important role in containing South El Monte OU contamination and meeting EPA's South El Monte OU remedial action objectives. The South El Monte OU interim remedy is the seventh interim remedial action that EPA selected to contain contaminated groundwater within the San Gabriel Valley Superfund Sites.

I-1