UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6873 ABC (RCx) | Date | April 7, 2011 |
|---|---|---|---|
| Title | United States, et al. v. Andruss Family Trust, et al. | | |

| Present: The Honorable | Audrey B. Collins | | |
|---|---|---|---|
| Angela Bridges | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**    ORDER Re: Intervenors' Request for Discovery (In Chambers)

     Pending before the Court is a Renewed Motion to Enter Proposed Consent Decree, filed on October 8, 2010, by Plaintiffs United States of America, on behalf of the U.S. Environmental Protection Agency ("EPA"), and the California Department of Toxic Substances (collectively "Plaintiffs"). (Docket No. 64.) Before the Court can review and approve that proposed consent decree, it must resolve whether to allow Intervenors in this case to conduct discovery in order to challenge the consent decree. (Docket No. 69.) The Court finds this matter appropriate for resolution without further oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons below, the Court DENIES the request for discovery. As noted at the end of this Order, the Court will order the parties to set a briefing and hearing schedule for the pending matters.

### BACKGROUND

     In this CERCLA case,[1] the Court had previously denied a motion to intervene by several entities in order to challenge a proposed consent decree. Those parties appealed and the Ninth Circuit reversed, allowing them to intervene.[2] Following remand, the Court entered a case management order, permitting the following entities to intervene in this case in order to challenge that consent decree: Aerojet General Corp.; TDY Industries, Inc.; Astro Seal, Inc.; Mary Brkich; Joan Linderman; M&T Company; Don Tonks; Roy Tonks; Tonks Properties; Mammoet Western, Inc.; Time Realty Investments, Inc.; Del Ray Industrial Enterprises, Inc.; Art Weiss, Inc.; and Art Weiss (collectively "Intervenors"). (Docket No. 62.) The Court also directed Plaintiffs to file a renewed motion to enter the consent decree and allowed Intervenors to file a brief supporting any request for discovery in order to challenge the consent decree.

     As a result, on October 29, 2010, Intervenors (with the exception of Don Tonks, Roy Tonks, and Tonks Properties), filed a brief in support of a request to conduct discovery on certain topics related to

---

     [1]The Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9675 ("CERCLA").

     [2]United States v. Aerojet Gen. Corp., 606 F.3d 1142 (9th 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6873 ABC (RCx) | Date | April 7, 2011 |
|---|---|---|---|
| Title | United States, et al. v. Andruss Family Trust, et al. | | |

their ability to challenge the consent decree. (Docket No. 69.) Initially, Intervenors sought to depose Bella Dizon, the South El Monte Operable Unit ("SEMOU") Superfund Manager from 1996 through 2003, and sought the production of documents on topics related to the EPA's knowledge surrounding a July 13, 2002 settlement agreement with a Group of 13 (or "G13") potentially responsible parties ("PRPs"). Intervenors also wished to propound interrogatories on two individuals who submitted declarations in support of Plaintiffs' motion to enter the consent decree in lieu of deposing them.

Both Plaintiffs and the "Group of 10" Settling Defendants (the "G10 Settling Defendants")[3] responded on December 3, 2010, opposing the request for discovery. (Docket Nos. 72, 73.) In response to Intervenors' requests, Plaintiffs prepared a declaration from Bella Dizon addressing most of the issues raised by Intervenors related to the G13 agreement. (Pl. Response 2, Ex. 1.) Plaintiffs also pointed out that Intervenors failed to identify what clarification was needed in the declarations and documentation supporting the consent decree. From Plaintiffs' perspective, then, Intervenors were improperly seeking to test the veracity of the individuals subject to the discovery requests and the only remaining issues were legal ones that did not require discovery. The G10 Settling Defendants further pointed out that the discovery requests would likely trigger privilege issues and potential discovery disputes, further delaying the settlement of their liability, frustrating one of the primary purposes of CERCLA: encouraging quick settlements in order to devote time and money to cleanup efforts instead of protracted litigation.

After engaging in discussions to resolve the discovery issues, a sub-set of Intervenors filed a reply brief on March 23, 2011, narrowing the issues to two topics for discovery[4]: (1) EPA's efforts to comply with its own guidance documents regarding orphan shares; and (2) EPA's preliminary and revised allocations for J.A.B. Holdings, Inc. ("JAB"). (Docket No. 88.) At a status conference on March 28, 2011, the Court heard oral arguments from Plaintiffs and permitted Plaintiffs and the G10 Settling Defendants to file brief sur-replies, which they did on April 4, 2011. (Docket Nos. 91, 92.)

## LEGAL STANDARDS

In approving a proposed consent decree in CERCLA litigation, the Court must be satisfied that the settlement is "'reasonable, fair, and consistent with the purposes that CERCLA is intended to serve.'" United States v. Montrose Chem. Corp., 50 F.3d 741, 747 (9th Cir. 1995); see also United States v. Aerojet Gen. Corp., 606 F.3d 1142, 1152 (9th Cir. 2010). First, the settlement must serve the two overarching purposes of CERCLA: (1) to ensure cleanup of hazardous substances released into the environment; and (2) to ensure that the costs of this cleanup are borne by responsible parties. See

---

[3]The G10 Settling Defendants are a sub-set of the G13 PRPs and are parties to the pending consent decree.

[4]Intervenors Art Weiss, Inc., Art Weiss, Astro Seal, Inc., Del Ray Industrial Enterprises, Inc., and TDY Industries, together filed the reply brief. The day after the reply brief was filed, Aerojet General filed a notice of settlement and is no longer an intervenor in this case. (Docket No. 89.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6873 ABC (RCx) | Date | April 7, 2011 |
|---|---|---|---|
| Title | United States, et al. v. Andruss Family Trust, et al. | | |

Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp., 976 F.2d 1338, 1340 (9th Cir. 1992). Second, any settlement under CERCLA must be reasonable, in that it serves the purpose of cleaning the environment, it compensates the public for the costs of remedial and response measures, and it accounts for variables of litigation. United States v. Cannons Eng'g Corp., 899 F.2d 79, 89–90 (1st Cir. 1990). Finally, the settlement must be both procedurally and substantively fair. Id. at 86. "Procedural fairness requires that settlement negotiations take place at arm's length" and "[s]ubstantive fairness requires that the terms of the consent decree are based on 'comparative fault' and apportion liability 'according to rational estimates of the harm each party has caused.'" Commissioner v. Esso Std. Oil S.A. (In re Tutu Water Wells CERCLA Litig.), 326 F.3d 201, 207 (3d Cir. 2003).

The Court should generally defer to the EPA's judgment in conducting this inquiry and approval of the consent decree is reviewed for abuse of discretion. Montrose Chem., 50 F.3d at 746. As a result, the decision whether to allow discovery related to a consent decree is discretionary, especially when it might delay settlement contrary to the interests embodied by CERCLA. See United States v. Albert Inv. Co., 585 F.3d 1386, 1396 (10th Cir. 2009) ("The district court has the ability to lessen any potential delay by denying discovery or by denying an evidentiary hearing."); see also United States v. Union Elec. Co., 132 F.3d 422, 430 (8th Cir. 1997) (finding no abuse of discretion to deny evidentiary hearing for CERCLA intervenors because they "had ample opportunity to file objections to the Proposed Consent Decree."). Thus, "it would disserve a principal end of the statute – achievement of prompt settlement and a concomitant head start on response activities – to leave matters in limbo until more precise information was amassed." Cannons Eng'g, 899 F.2d at 88.

## DISCUSSION

### A.     EPA's Compliance with Orphan Share Guidance

Intervenors seek discovery on the EPA's knowledge of orphan shares in July 2002 because many parties who were originally allocated shares of liability were removed from the liability pool, so the EPA reallocated those orphan shares to the non-settling parties in proportion to their adjusted shares, resulting in a 260% total increase in Intervenors' shares. (See Docket No. 64-2 (Thompson Decl.) ¶ 8.) According to Intervenors, discovery is necessary because the EPA was required to follow its own guidance on calculating the amount of any early settlors' contribution to orphan shares, and the failure to do so may be relevant to the procedural fairness of the consent decree. In support of this position, Intervenors cite a June 1996 EPA guidance document entitled "Interim Guidance on Orphan Share Compensation for Settlors of Remedial Design/Remedial Action and Non-Time-Critical Removals." (Hedgpeth Decl., Ex. B (the "1996 Guidance").) They also cite a February 2, 2001 EPA memorandum entitled "Revised Orphan Share Compensation Reform Questions and Answers," and a January 2001 EPA guidance document entitled "Orphan Share Superfund Reform Questions and Answers." (Id., Ex. A (together the "2001 Guidance").)

Intervenors' request for discovery on this basis fails for multiple independent reasons. First, the EPA's decision to allocate a portion of orphan shares to early settlors under this guidance is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6873 ABC (RCx) | Date | April 7, 2011 |
|---|---|---|---|

| Title | United States, et al. v. Andruss Family Trust, et al. |
|---|---|

discretionary as a part of any overall settlement analysis, so the failure of the EPA to follow the guidance does not demonstrate procedural unfairness and discovery on this point is unnecessary. In order for a policy statement to bind an agency, it must: "'(1) [p]rescribe substantive rules – not interpretive rules, general statements of policy or rules of agency organization, procedure or practice – and; (2) conform to certain procedural requirements.'" United States v. Alameda Gateway, Ltd., 213 F.3d 1161, 1168 (9th Cir. 2000) (quoting United States v. Fifty-Three (53) Eclectus Parrots, 685 F.2d 1131, 1136 (9th Cir. 1982)). The guidance at issue here is clearly procedural; its purpose was to provide "further direction" for providing orphan share compensation in settlements with PRPs and was "intended exclusively as guidance for employees of the [EPA]," not as a rule that created any legal obligations. (1996 Guidance 1, 5.) See id. (finding that regulation was merely procedural because it was described as "guidance" intended only to guide Army Corps of Engineers employees in negotiating agreements). Further, the guidance was not published in the Federal Register, which undermines any inference that it was intended to bind the EPA. See id. ("[T]he Engineering Regulation was not published in either the Code of Federal Regulations or the Federal Register, providing further evidence that the regulation was not intended to be binding."). Because the EPA was not bound to follow this guidance, discovery is unnecessary to determine whether it actually did because that would have no impact on the consideration of the consent decree.

Second, even if the guidance was binding, it was not intended to apply here, where the only identified PRPs are owners or operators at the site. (1996 Guidance 2 n.2 ("This guidance is not intended to apply at sites where the only PRPs at the site currently or formerly owned or operated the facility[.]"); 2001 Guidance 5 (explaining that orphan share compensation is not available at "'Owner/operator only' sites – sites where every PRP is liable as a current or former owner and/or operator (i.e., 'chain-of-title' sites where the only PRPs identified by the Region are owners or operators and there are no generators or transporters).)" (emphasis in orig.).)

Finally, even if this policy guidance applied here and bound the EPA, there is still no need for discovery. Intervenors have accepted that the EPA did not know the extent of any orphan share when it approved the G13 settlement in 2002 (Dizon Decl., ¶¶ 8–9), so the crux of their argument is that the proposed consent decree may be procedurally unfair because the EPA should have followed the orphan share guidance to identify orphan shares at that time. However, this is purely a legal issue that can be raised and resolved when the Court considers whether to approve the proposed consent decree. No discovery is needed to factually develop the issue.

Thus, the Court DENIES Intervenors' request for discovery on the EPA's alleged failure to follow its orphan share guidance.

  **B. JAB Allocation**

Intervenors also seek discovery on the preliminary and adjusted allocations to JAB. JAB was a part of the G13 PRPs, but it is not a party to the G10 settlement agreement because it entered an "ability to pay" settlement with the EPA, including a full release and contribution protection. JAB's preliminary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6873 ABC (RCx) | Date | April 7, 2011 |
|---|---|---|---|
| Title | United States, et al. v. Andruss Family Trust, et al. | | |

allocation that the EPA used in calculations for the 2002 settlement was 5.1%, but that number increased to 13.75% using the EPA's revised allocations. (Dizon Decl., Ex. B at 20; Thompson Decl., Attachment 3, Table 2 at 52.) Intervenors complain that Plaintiffs are now seeking to charge JAB's increased allocation to them and they should be able to take discovery on the EPA's allocations to JAB, particularly the reasons why the EPA chose different representative wells for the original and revised allocations, which might impact the procedural fairness of the consent decree.

The Court will not allow discovery for this reason. First, Plaintiffs have already disclosed the reason for the changed allocations – the adjusted allocation included additional groundwater data and two more representative wells (Thompson Decl. ¶ 8) – so further discovery could only shed minimal light on the issue, which does not justify the delay it would cause. Second, Intervenors are free to argue that the increased allocation to JAB renders the consent decree unfair, including that the change in wells was improper, but discovery into why those decisions were made would not strengthen its position on that point. Thus, the Court DENIES Intervenors' request for discovery on this basis.

## CONCLUSION

The Court DENIES Intervenors' request to conduct further discovery. The parties are ORDERED to meet and confer and set a briefing and hearing schedule for the proposed consent decree and for any motion challenging the proposed consent decree, which should not be any shorter than the schedule provided by the local rules. See Local Rules 6-1, 7-9, 7-10. The G10 Settling Defendants are ORDERED to set any renewed Motion for Approval of Settlement Agreement and Dismissal and Bar Order in the SEMOU cases[5] for the same schedule as the consent decree and any motion challenging it.

**IT IS SO ORDERED.**

:

Initials of
Preparer                                   AB

---

[5] The SEMOU cases are San Gabriel Basin Water Quality Authority v. Aerojet General Corp., et al., No. 02-4565 ABC (RCx), and the cases consolidated with it for pretrial purposes.